May it please the court, I represent Larry Wilkins and I would request the court to allow that, reverse the district judge's motion, order, not allowing Mr. Gormley to speak on behalf of the district judge. Mr. Wilkins motion to withdraw his guilty plea and remand the case to the district court. Judge Strins' order of May 8, 2012, most importantly as I see the matter from Mr. Wilkins' perspective, downplayed Ms. Dukin's role, characterizing her misdeeds as impeachment evidence. We found out later as the investigation developed that Ms. Dukin, one of the things that she had done was she falsified her resume, she invented a master's degree. I think that's impeachment evidence that why her misconduct was far from that. It was affirmative criminal behavior in an incredible number of cases which the state supreme court has indicated that belies reconstruction. Mr. Gormley, if we turn to Judge Strins' finding, as I understand the record, he found that there was not a reasonable probability that your client would have gone entering into the guilty plea had he known everything that he knows now. How do we, on what basis do we overrule that finding by the judge? Well, let me answer that by calling the panel's attention to a case which I didn't cite in my written materials, but it's United States v. Dominguez Benitez. 542 U.S. at 74, which is a case involving a motion to vacate a guilty plea. And I think the reason that I bring the case to the court's opinion at this juncture is because I noticed as I was preparing for this the quote that the point of the question is not to second guess the defendant's actual decision. If it is reasonably probable he would have gone to trial absent the error that it is no matter that the choice may have been foolish. But Judge, go ahead. No, no, but that's the key. That's the same as our Ferrara test. If it is reasonably probable, Judge Strins has made a finding that in this case it was not reasonably probable. In fact, that the reasonable probability is cast exactly the other way, that it is reasonably probable that he would have done nothing different. The question was, how do you overcome that finding? The finding is based on the fact on Judge Strins' characterization that the entire matter involved a dispute over mere impeachment evidence. No, that's not based on that. What Judge Strins has cited, and we reviewed some of this in our discussion with Mr. Sinshiner, your man was apprehended with what I've referred to loosely as a stockpile of drugs in his possession. At the time of his detention, a field test showed positive for this being a controlled substance. Other bags which had not been opened by Dukin or anyone else at Hinton before this problem arose were subsequently tested under circumstances which no one has cast doubt upon, the circumstances of the test itself, and were found to contain the controlled substance. The bags were supplied from Wilkins to Merritt in response to a request from the undercover officer to buy drugs. I mean, you've got all that accumulation of evidence, plus the fact that Wilkins, like Merritt, admitted during the plea colloquy and never challenged during the plea colloquy the fact that this was cocaine, that this was a controlled substance. I have two responses to that, Judge. First, my base response is that all of that evidence which you have recited was in Ms. Dukin's exclusive possession. The field test was in her exclusive possession? No, not the field test. Well, that's one of the things. The undercover agent's request to Merritt and Wilkins' response to that request, that's got nothing to do with Dukin. And there's no showing that Dukin ever laid a finger on any of the unopened bags. None at all. There is no showing that she did not lay a finger on any of the unopened bags. Other than the fact that they were unopened, which is pretty good evidence that no one laid a finger on them in any way that is material here. Well, except that they were over at a lab in the possession of somebody whose daily job was opening bags and proceeding along, and who has... Well, you're saying no one knows... Well, Judge, I don't concede that the chain of custody is intact for those bags. As a matter of fact, I dispute, as things stand, it seems that Ms. Dukin has thoroughly corrupted the chain of custody of those substances. And to then proceed from the point that there was a field test, which is essentially dry labbing by somebody without a chemical background, that there was a field test on the street, and things proceeded along, and then Ms. Dukin having the universe of substances that then returned them to the police, I think that is where I would dispute Judge Stearns' finding and his prediction as to what any new trial would show. You've heard the Governance Council explain that essentially, as I understand it, they could have successfully and quite easily have prosecuted your client without anything from the drug lab at all. What do you have to say to that? Well, they could have, but Mr. Wilkins has rights to bring in the drug lab and to put in all of that. But how would that exonerate him? Yes, you could prove that the state drug lab was no good, but if they're not relying on the drug lab, if they're simply saying, here's how the transaction went down, here's what was said, here's what was produced, and no evidence from the drug lab, how would you beat that case? By putting in what happened to those drugs from the time that a Boston police officer dropped them over in Jamaica Plain until he got them back a month later, and then putting in as much of that Inspector General's report regarding the goings-on at the lab, coupled with Ms. Dukin's with the lab certificate, and that Ms. Dukin had a hand in analyzing the drugs, and putting it to a jury that, what shall you say to convict my client? That this is all right, or that he is guilty beyond a reasonable doubt. And the failings of this drug lab and Ms. Dukin's activities, they have inflicted a grievous wound on the criminal justice process. Let me interrupt you and ask if Chief Judge Lynch has any questions of you, Mr. Gormley. No, I do not. Thank you. Thank you, Your Honor. Ms. Chadewitz. Good morning again. The District Court's order denying Mr. Wilkins 2255 petition should be affirmed, we think, for the same reasons that the District Court's order denying Mr. Wilkins' motion to set aside his plea should be affirmed. I would like to address the reasonable probability standard that the Court inquired of Mr. Gormley. In this case, the District Court made a factual finding that the remaining evidence in the case, putting aside Dukin's test, was overwhelming. That finding is reviewed by this Court for clear error, and given the evidence in the case, it was certainly a plausible view of the facts. In addition to the overwhelming evidence in the case that would make it unlikely that the defendants would really want to go to trial, is the fact that had the defendants gone to trial, they would have faced the possibility that the government would withdraw its agreement not to file an A51 information and to recommend a three-level reduction for responsibility and the government's recommendation at sentence, which would require a three-level reduction for responsibility. The three-level reduction represented a downward variance from the low end of the guidelines range. That meant that the defendants would each be facing a low end of the advisory guideline range of 262 months, rather than the low end range that they were facing at the time of their plea of 151 months. Given all of the evidence, including the second series of tests, and the likelihood that they would be convicted after trial and face a substantially higher sentence given their both spectacular criminal histories, the District Court plausibly found that it was unlikely the defendants would at the end of the day actually go to trial. With respect to the second series of tests, I just wanted to mention that Mr. Wilkins actually conceded in his brief that the second series of tests would be admissible at trial because, of course, the standard for admissibility when there is a chain of custody issue is very low. The evidence is admissible. The question of chain of custody goes to the weight, not to the admissibility of the evidence. And in this case, even if Mr. Wilkins or Mr. Merrick could have vigorously attacked the chain of custody, that evidence and all the other evidence was, as the District Court found, overwhelming. But what do you say to their argument that as experienced defense counsel looking at a case, if you've got one case where it looks like it's a routine slam dunk, you've got a lab testing it, there's essentially no defense is what they were looking at. And all of a sudden, you instead have a case where there's a potential for a giant red herring in the form of government misconduct that the jury could get very upset about and decide they're not going to convict but to be tainted by that behavior by the government. Aren't those two very different cases from both the prosecutor's and the defendant's perspective? I have to agree that the defendant's ability to attack in some way the chain of custody would be a giant red herring. But I have confidence that the jury would understand that. And given all of the evidence of the actual drug deal and the field test and the second series of tests, the defendant's ability to attack in some way would be a giant red herring. It was unlikely the district court found that the defense would really take that risk, that the jury wouldn't see that that was just a red herring, find the defendants guilty, at which point they would be facing a substantially higher sentence. In any event, if the defense depended on a red herring, doesn't that run us into the doctrine that you can't base a finding of no reasonable probability on the prospect of jury nullification? If what the defense is saying is that the jury will find my client not guilty because of this red herring, rather than because they really think he's not guilty, it seems to me that's the type of fact that the Supreme Court has told us we can't weigh in making a reasonable probability finding. I'm unfamiliar with case law about jury nullification in that context, but I certainly would agree that the Supreme Court would be able to do that. But given all the evidence in the case and what they were facing, it was simply unlikely that the defendants would take the risk that the jury would nullify the verdict if they could get such an instruction. Well, let me ask you this as a prosecutor, though. You've got two cases that are identical in all respects, except in one, the drug lab is what everyone thought this drug lab was before this happened. It was unimpeachable, it was scientific, it was like you see on TV, it's a slam dunk. And in the identical case that's just like it, you've got one difference, Dukin had the drugs. As a prosecutor, aren't you going to plea bargain those cases and evaluate those cases in a fundamentally different manner? Well, and that might have happened before the defendants entered their pleas. But now we're in a different posture. The defendants have entered their pleas and they're not entitled under this circuit's law to set aside their guilty plea under a rule of an analysis or under a 2255 analysis merely in the hopes of negotiating a better deal. That's not a basis for setting aside a plea. So they might have gotten a better deal had this happened before they entered their pleas, but that's simply not what happened in this case. Now they both have to make a showing that their pleas were involuntary. And they simply cannot do that under this circuit's law or under the Supreme Court's law. And they can't show that the district court erred when it found that they hadn't made the showing. Do they need to show that the plea was involuntary or that accepting the particular offer that was made by the prosecution, which was based on a representation that there had been a sufficient drug test? They have to show that their plea was involuntary. I'm not sure I understand the question. Their allegation to the district court was Mr. Merrick's purported plausible basis for setting his plea aside. And Mr. Wilkin's 2255 claim, for which he has a certificate of appealability, was that their plea was involuntary. And the law is quite clear under Brady v. United States and Ferrara v. United States. They simply haven't established it. You know, the fact that there's overwhelming public interest in this case because of the spectacular nature of Ms. Stuckin's conduct really should not suggest to this court that it should deviate from its well-settled principles. Let me ask if Chief Judge Lynch has any questions of you, Counsel. No, I do not. Thank you.